DUMPER SCOW No. 11.[1]

LOVE *et al. v.* DUMPER SCOW No. 11.

*(District Court, E. D. New York.    November 20, 1891.)*

SALVAGE—EVIDENCE—PREPONDERANCE OF PROOF.
    Libelants produced two witnesses, themselves libelants, from their tug R., who asserted that after a certain scow, which had been in tow of the tug T., had sprung a leak and sunk, the R. had rendered salvage services to her, by pushing her further on the shore and notifying her owners. Their story was flatly contradicted by the witnesses from the tug T., who asserted that, after the scow was left by the T.,

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

she was never moved by any vessel. *Held*, on this conflict of testimony, that the libelants had failed to prove their case by preponderance of evidence, and the libel should be dismissed.

In Admiralty. Suit to recover salvage compensation.

*Wing, Shoudy & Putnam*, for libelants.

*Goodrich, Deady & Goodrich*, for claimant.

BENEDICT, J. This is an action by the owners and crew of the steam-tug Chas. Runyon to recover salvage. Its decision turns upon a question of fact not ordinarily presented in actions of this character. The circumstances are as follows: A dumper scow, while in tow of the tug Talisman, sprung a leak, and sank off Coney island, in the lower bay. After an ineffectual effort by the Talisman to get the scow afloat, she was left by the Talisman where she had grounded. On the next day, or the day thereafter, a derrick was sent down by the owners of the scow to raise her. This derrick was towed down by the tug Chas. Runyon, and by the same tug the derrick, with the scow in slings, was towed up to New York city. For this last service of towing the derrick down, and the derrick and scow to the city, the Runyon was paid. She now claims to have rendered other services prior to the time of towing down the derrick, which entitle her to salvage. The assertion is that on the day after the day when the scow sank, while the tug Runyon was proceeding from Barren island to New York, the scow was observed by those on board her, abandoned; that they proceeded to her, and, finding her afloat, put a hawser upon her, and towed her a mile and a half towards the iron pier, and until she fetched up on the bottom; that, in order to prevent her from floating off again, the Runyon, by pushing against her, shoved her still more aground, and then left her, and proceeded to the city, and there notified her owners of her situation; that about 6 o'clock in the evening of the same day the Runyon went down to the scow again, and, by hooking an anchor on her, succeeded in pulling her somewhere near a quarter of a mile further up on the shore, where she was left fast on the ground, and there remained until raised by the derrick. These services, asserted to have been rendered by the Runyon prior to the arrival of the derrick, and subsequent to the time the scow grounded, are testified to by two witnesses from the Runyon, who are themselves libelants. The claimants produced two witnesses from the Talisman, who were on board the Talisman at the time the scow was sunk, and who assert that the account given by the master and the deck-hand of the Runyon, in regard to any services rendered on the Runyon between the time when the scow was left by the Talisman and the time when she was taken hold of by the derrick sent down by the owners, is wholly false. They assert in positive terms that the scow was never moved by the Runyon or any other vessel between the time when she was left by the Talisman and the time when she was taken hold of by the derrick; that the scow when left by the Talisman was so fast aground that the Talisman, after strenuous efforts, was unable to move her, and that it would not be possible for the Runyon (being of less power than the

Talisman) to move her at all; that it was not possible for the scow to float, for the reason that she was in a sinking condition, and that she in fact sank to the bottom as soon as the chains of the derrick were loosed. Furthermore, those witnesses say that the position where the scow was left by them was carefully observed by them at the time, that ranges were taken, and that they saw the scow when the derrick raised her, and she was then in the same position where she had been left by the Talisman. In this conflict of evidence, the general rule that the libelant, in order to succeed, must prove his case by a preponderance of evidence, is to be applied. Here there is no preponderance of evidence in favor of the libelants, and the libel must therefore be dismissed, with costs.